1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

| | | |
|---|---|---|
| BENJAMIN SANCHEZ, | ) ) | Case No. CV 14-03641-JEM |
| Plaintiff, | ) ) ) | |
| v. | ) ) | MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | SECURITY |
| Defendant. | ) ) ) | |

18

**PROCEEDINGS**

19     On May 21, 2014, Benjamin Sanchez ("Plaintiff" or "Claimant") filed a complaint

20 seeking review of the decision by the Commissioner of Social Security ("Commissioner")

21 denying Plaintiff's applications for Social Security Disability and Disability Insurance

22 benefits and for Supplemental Security Income ("SSI") benefits.  The Commissioner filed

23 an Answer on September 2, 2014.  On November 13, 2014, the parties filed a Joint

24 Stipulation ("JS").  The matter is now ready for decision.

25     Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this

26 Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record

27 ("AR"), the Court concludes that the Commissioner's decision must be reversed and this

28

1 | case remanded for further proceedings in accordance with this Memorandum Opinion
2 | and Order and with law.

3 | **BACKGROUND**

4 |     Plaintiff Benjamin Sanchez is a 54-year-old male who applied for Social Security
5 | Disability and Disability Insurance benefits on October 1, 2011 and Supplemental
6 | Security Income benefits on October 3, 2011, alleging disability beginning August 29,
7 | 2011.  (AR 39.)  The ALJ determined that Plaintiff has not engaged in substantial gainful
8 | activity since August 29, 2011, the alleged onset date.  (AR 41.)

9 |     Plaintiff's claims were denied initially on January 5, 2012.  (AR 39.)  Plaintiff filed a
10 | timely request for hearing, which was held before Administrative Law Judge ("ALJ")
11 | Elizabeth R. Lishner on November 1, 2012 in West Los Angeles, California.  (AR 39.)
12 | Claimant appeared and testified at the hearing and was represented by counsel.  (AR
13 | 39.)  Vocational expert ("VE") Enrique N. Vega also appeared and testified at the
14 | hearing.  (AR 39.)

15 |     The ALJ issued an unfavorable decision on December 12, 2012.  (AR 39-49.)  The
16 | Appeals Council denied review on March 13, 2014.  (AR 1-3.)

17 | **DISPUTED ISSUES**

18 |     As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as
19 | grounds for reversal and remand:

20 |     1.    Whether the ALJ properly determined Benjamin Sanchez could perform the
21 |         identified alternative work.

22 |     2.    Whether the ALJ properly propounded a complete hypothetical to the
23 |         vocational expert.

24 | **STANDARD OF REVIEW**

25 |     Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine
26 | whether the ALJ's findings are supported by substantial evidence and free of legal error.
27 | Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan,
28 |

1 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by

2 substantial evidence and based on the proper legal standards).

3      Substantial evidence means "'more than a mere scintilla,' but less than a

4 preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting

5 Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such

6 relevant evidence as a reasonable mind might accept as adequate to support a

7 conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation

8 omitted).

9      This Court must review the record as a whole and consider adverse as well as

10 supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

11 Where evidence is susceptible to more than one rational interpretation, the ALJ's

12 decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599

13 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole

14 and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"

15 Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

16 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

17 **THE SEQUENTIAL EVALUATION**

18      The Social Security Act defines disability as the "inability to engage in any

19 substantial gainful activity by reason of any medically determinable physical or mental

20 impairment which can be expected to result in death or . . . can be expected to last for a

21 continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A),

22 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to

23 determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

24      The first step is to determine whether the claimant is presently engaging in

25 substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the

26 claimant is engaging in substantial gainful activity, disability benefits will be denied.

27 Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether

28 the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at

746.  An impairment is not severe if it does not significantly limit the claimant's ability to work.  Smolen, 80 F.3d at 1290.  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations.  Parra, 481 F.3d at 746.  If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

      If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).  The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

1 **THE ALJ DECISION**

2    In this case, the ALJ determined at step one of the sequential process that Plaintiff

3 has not engaged in substantial gainful activity since August 29, 2011, the alleged onset

4 date.  (AR 41.)

5    At step two, the ALJ determined that Plaintiff has the following medically

6 determinable severe impairments: headaches; hypertension; degenerative changes of

7 the cervical spine; neuropathy; and depression.  (AR 41-42.)

8    At step three, the ALJ determined that Plaintiff does not have an impairment or

9 combination of impairments that meets or medically equals the severity of one of the

10 listed impairments.  (AR 42-43.)

11    The ALJ then found that Plaintiff has the RFC to perform medium work as defined

12 in §§ 20 C.F.R. 404.1567(c) and 416.967(c) including lifting up to 50 pounds

13 occasionally and 25 pounds frequently, and sitting, standing and/or walking up to 6

14 hours in an 8-hour workday, with the following restrictions: he is limited to simple

15 repetitive tasks and has limited English skills.  (AR 43-48.)  In determining this RFC, the

16 ALJ made an adverse credibility determination.  (AR 44.)

17    At step four, the ALJ found that Plaintiff is not capable of performing his past

18 relevant work as a cook.  (AR 48.)  The ALJ, however, also found that, considering

19 Claimant's age, education, work experience and RFC, there are jobs that exist in

20 significant numbers in the national economy that Claimant can perform, including cook

21 helper and grocery packer.  (AR 48-49.)

22    Consequently, the ALJ found that Claimant was not disabled, within the meaning

23 of the Social Security Act.  (AR 49.)

24 **DISCUSSION**

25    The ALJ decision must be reversed.  The VE's testimony that Plaintiff can perform

26 alternative jobs in the national economy conflicts with the Dictionary of Occupational

27 Titles ("DOT") and no explanation was given to explain the VE's variance from the DOT.

28 The ALJ also failed to pose a complete hypothetical question to the VE.

1    The ALJ's RFC is not supported by substantial evidence.  The ALJ's fifth step

2 determination that Plaintiff can perform alternative work in the national economy is not

3 supported by substantial evidence.  The ALJ's nondisability determination is not

4 supported by substantial evidence nor free of legal error.

5      **A.    Background**

6    The ALJ assessed Plaintiff Benjamin Sanchez with a medium work RFC "limited to

7 simple repetitive tasks," and has "limited English skills".  (AR 43.)  The ALJ also found

8 that Claimant is "not able to communicate in English, and is considered in the same way

9 as an individual who is illiterate in English."  (AR 48.)  The ALJ further found that "the

10 records show that the Claimant has reported that he does not speak or understand

11 English."  (AR 48.)  Thus, the ALJ made a finding that "Claimant is not literate in

12 English."  (AR 48.)

13    At step four of the sequential process, the ALJ found that Plaintiff cannot perform

14 his past relevant work as a cook which is classified as skilled work.  (AR 48.)

15 Nonetheless, at step five of the sequential process, the ALJ determined, based on the

16 VE's testimony, that Plaintiff could perform alternative, unskilled medium occupations of

17 cook helper and grocery packer.  (AR 49.)

18      **B.    Relevant Federal Law**

19    The Commissioner bears the burden at step five of the sequential process to

20 prove that a claimant can perform other work in the national economy, given his RFC,

21 age, education and work experience.  20 C.F.R. 416.912(g); Silveira v. Apfel, 204 F.3d

22 1257, 1261 n.4 (9th Cir. 2000).  Literacy or education level is a vocational factor relevant

23 only to the step five inquiry and not to the existence of a disability.  Silveira, 204 F.4d at

24 1261 n.14; Elizondo v. Astrue, 2010 WL 3432261*6 (E.D. Cal., Aug. 31, 2010).  The

25 Commissioner bears the burden of proving a claimant is literate.  Silveira, 204 F.3d at

26 1261 n.14.  Social Security regulations divide education levels into four categories, two

27 of which are relevant here.  First is illiteracy, which is defined as the "inability to read or

28 write."  20 C.F.R. § 416.964 (b)(1).  The regulation provides:

1   Illiteracy means the inability to read or write.  We consider

2   someone illiterate if the person cannot read or write a simple message

3   such as instructions or inventory lists even though the person can sign

4   his or her name.  Generally, an illiterate person has had little or no

5   formal schooling.

6   The regulation goes on to say:

7   Inability to communicate in English.  Since the ability to speak,

8   read and understand English is generally learned or increased at

9   school, we may consider this an educational factor.  Because English

10   is the dominant language of the country, it may be difficult for someone

11   who does not speak and understand English to do a job, regardless of

12   the amount of education the person may have in another language.

13   Therefore, we consider a person's ability to communicate in English

14   when we evaluate what work, if any, he or she can do.  It generally

15   does not matter what other language a person may be fluent in.

16   20 C.F.R. § 416.964 (b)(5).

17   Second "marginal" education, by contrast, means 6th grade level or less:

18   Marginal education means ability in reasoning, arithmetic, and

19   language skills which are needed to do simple, unskilled types of jobs.

20   We generally consider that formal schooling at a 6th grade level or less

21   is a marginal education.

22   § 416.946 (b)(2).

23   Plaintiff is illiterate under these regulations and the ALJ's finding that Plaintiff is

24   "not literate in English."  (AR 48.)

25   **C.    The VE's Testimony Conflicts With The DOT And
        Failed To Offer Any Explanation For The Variance**

26   

27   Plaintiff contends that the VE's testimony and the ALJ's step five decision conflicts

with the DOT.  ALJs routinely rely on the DOT "in evaluating whether the claimant is able

28

1  to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276

2  (9th Cir. 1990) (citations omitted); 20 C.F.R. §§ 404.1566 (d)(1), 416.966 (d)(1).

3  Typically, the best source of how a job is generally performed in the national economy is

4  the DOT. Pinto, 249 F.3d at 845. DOT raises a presumption as to job classification

5  requirements. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not

6  rely on a vocational expert's testimony regarding the requirements of a particular job

7  without first inquiring whether the testimony conflicts with DOT. Massachi v. Astrue, 486

8  F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p ("[T]he adjudicator has an

9  affirmative responsibility to ask about any possible conflict between that [vocational

10  expert] evidence and information provided in the [DOT].")). In order to accept vocational

11  expert testimony that contradicts the DOT, "the record must contain 'persuasive

12  evidence to support the deviation.'" Pinto, 249 F.3d at 846 (quoting Johnson, 60 F.3d at

13  1435). The ALJ must obtain a reasonable explanation for the variance and then must

14  decide whether to rely on the VE or DOT. See Pinto, 249 F.3d at 847. Failure to do so,

15  however, can be harmless error where there is no actual conflict or the VE provides

16  sufficient support to justify any conflicts with or variation from DOT. Massachi, 486 F.3d

17  at 1154 n.19.

18       There is plainly a variance between the VE's testimony in this case and the DOT

19  job descriptions for the jobs identified by the VE. The cook helper and grocery packer

20  jobs both require Language Level 1 language skills. DOT 317.687-010; 920.687-014.

21  DOT defines language Level 1 as follows:

22       Reading: Recognize meaning of 2,500 (two - or three - syllable)

23      words.  Read at a rate of 95-120 words per minute.  Compare

24      similarities and differences between words and between series of

25      numbers.

26       Writing: Print simple sentences containing subject, verb, and

27      object, and series of numbers, names and addresses.

28

8

1          Speaking: Speak simple sentences, using normal word order,

2          and present and past tenses.

3  DOT, Appendix C, 1991 WL 688702 (G.P.O.)  There is no way to square the DOT

4  language requirements for the cook helper and grocery packer jobs with the ALJ's

5  finding that Plaintiff is illiterate in English.

6          The ALJ asked VE Enrique N. Vega at the hearing if his testimony was consistent

7  with the DOT.  (AR 63.)  The VE answered in the affirmative.  (AR 63.)   There was no

8  acknowledgment of any conflict with the DOT nor any explanation for the variance

9  between the VE's testimony and the DOT.  As a result, Mr. Vega's opinion that Plaintiff

10  can perform the cook helper and grocery bagger occupations carries no weight.

11  Massachi, 486 F.3d at 1153-54; Guzman v. Astrue, 2010 WL 1929563*1 (C.D. Cal.).

12          The ALJ's determination that the VE's testimony is consistent with the DOT (AR

13  49) is also plainly incorrect.  Nor did the ALJ offer any explanation for the conflict

14  between the VE's testimony and DOT, or his finding that Plaintiff is illiterate in English.

15  Numerous cases have reversed ALJ decisions where the ALJ and the vocational expert

16  failed to explain a deviation between a claimant's literacy and DOT jobs requiring

17  language levels of 1 and 2.  See, e.g., Pinto, 249 F.3d at 843, 847-48; Her v. Astrue,

18  2010 WL 3069330, at *5 (E.D. Cal. Aug. 3, 2010); Lopez v. Astrue, 2010 WL 2674432,

19  at *3 (C.D. Cal. July 1, 2010); Guzman, 2010 WL 192563, at *1; Mkhitaryan v. Astrue,

20  2010 WL 1752162, at *2 (C.D. Cal. April 27, 2010); Farias v. Astrue, 2010 WL 796768,

21  at *6 (N.D. Cal. March 5, 2010); Diaz v. Astrue, 2009 WL176316, at *4 (C.D. Cal. Jan.

22  26, 2009); Mora v. Astrue, 2008 WL 5076450, at *3, *4 (C.D. Cal. Dec. 1, 2008); Turcios

23  v. Astrue, 2008 WL 929122, at *9 (N.D. Cal. April 4, 2008).

24          Both the VE and the ALJ were in error for failing to explain the conflict between

25  the VE's testimony and DOT.

26

27

28

**D.    The ALJ's Hypothetical Question To The VE Was Improper**

Plaintiff asserts that the ALJ posed an incomplete hypothetical to the VE.  The Court agrees.

Although Plaintiff testified through an interpreter at the hearing (AR 55), the ALJ did not question Plaintiff about the scope of his English skills.  Plaintiff testified he completed the sixth grade.  (AR 57.)  He also testified he worked as a cook for 12 years. (AR 57.)

The ALJ posed the following hypothetical question to the VE:

> Q.  Assume a hypothetical individual of the same age, <u>education</u>, experience as the Claimant, who can lift 50 pounds occasionally, 25 pounds frequently, stand, walk, and sit six, and can do simple repetitive tasks.  Could he perform his past work?

(AR 62.)  (Emphasis added.)  The VE answered no but subsequently indicated Plaintiff could perform alternative, unskilled medium jobs in the national economy.  (AR 62.)

There are two deficiencies in the ALJ's hypothetical to the VE.   First, there is no mention of any language limitations or that Claimant is "not able to communicate in English" and is "not literate in English."  (AR 48.)  Nor is there any reference to the ALJ's RFC limitation of "limited English skills."  (AR 43.)  There is no evidence the VE was even aware of these limitations.

Second, the hypothetical asked the VE to assume someone with the same education as Plaintiff.  Mr. Sanchez testified he completed the sixth grade.  (AR 57.)  Thus, the ALJ's hypothetical assumed an individual with a "marginal education" under Social Security regulations (20 C.F.R. § 404.1564(b)(2)), which is plainly inconsistent with the ALJ's finding that Plaintiff is illiterate.  A marginal education obviously would indicate higher level English skills than illiteracy.

1   Plaintiff's counsel then asked a follow-up question to the VE about limited English

2   skills:

3   Q.  What if we were to take the individual in the first hypothetical

4   and then also add the limitation that their ability to communicate in

5   English is limited.

6   A.  That should not affect my answer.  He would still be able to do

7   it.

8   (AR 63.)  Limited ability to communicate in English is not the same as "illiterate" or "not

9   able to communicate in English."  The latter limitations indicate <u>no</u> ability to communicate

10  in English.  The VE's answer also was based on the ALJ's original hypothetical asking

11  the VE to assume someone with a <u>marginal</u> education.

12  The Ninth Circuit requires that an ALJ's hypothetical question to a VE contain all

13  of claimant's limitations.  <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988).  VE's

14  testimony that does not contain all of a plaintiff's limitations has no evidentiary value and

15  does not constitute substantial evidence.  <u>Id.</u> at 422.  Here, the ALJ and/or Plaintiff's

16  counsel never asked the VE whether someone who is illiterate and is unable to

17  communicate in English could perform the cook helper and grocery bagger occupations.

18  The hypotheticals did not contain all of Plaintiff's limitations and were incomplete.  As a

19  result, the VE's testimony does not constitute substantial evidence.

20  In determining a claimant's RFC, an ALJ must consider all relevant evidence in

21  the record, including medical records, lay evidence, and the effects of symptoms.

22  <u>Robbins</u>, 446 F.3d at 883.  The ALJ's RFC did not accurately state Plaintiff's language

23  limitations and thus is unsupported by substantial evidence.  The Court observes that

24  there is a conflict between the ALJ's illiteracy finding (AR 48) and her RFC finding that

25  Plaintiff has "limited English skills."  (AR 43.)  It appears to the Court that the ALJ

26  obtained her RFC limitation of limited English skills from the VE's response to counsel's

27  question to the VE, having failed to ask a proper question in her initial hypothetical.

28  / / /

1          **E.      The Error Was Not Harmless**

2          The Commissioner argues that any error in failing to explain the deviation from the

3    DOT or in propounding an incomplete hypothetical is harmless.  See Tommasetti v.

4    Astrue, 533 F.3d 1035, 1038 (error harmless if inconsequential to the ultimate

5    nondisability determination); Carmickle v. Comm'r Soc. Sec. Adm., 533 F.3d 1155,

6    1162-63 (9th Cir. 2008) ("the relevant inquiry . . . is whether the ALJ's decision remains

7    legally valid, despite [any] error").  The Court disagrees.

8          The Commissioner advances two reasons why the ALJ's errors are harmless.

9    First, the Commissioner argues that Plaintiff already has demonstrated an ability to

10   perform Language Level 2 work.  Specifically, Plaintiff testified he worked as a cook for

11   16 years.  (AR 57.)  According to the DOT, the code occupation requires Language

12   Level 2 language skills defined as follows:

13              Reading: Passive vocabulary of 5000-6000 words.  Read at a rate

14         of 190-215 words per minute.  Read adventure stories and comic books,

15         looking  up  unfamiliar  words  in  dictionary  for  meaning,  spelling,  and

16         pronunciation.   Read  instructions  for  assembling  model  cars  and

17         airplanes.

18              Writings: Write compound and complex sentences, using cursive

19         style, proper end punctuation, and employing adjectives and adverbs.

20              Speaking: Speak clearly and distinctly with appropriate pauses and

21         emphasis, correct punctuation, variations in word order, using present,

22         prefect and future tenses.

23   (DOT 526.381-026.)  The ALJ thus argues that Plaintiff's work as a cook is consistent

24   with the VE's testimony that Plaintiff can perform the Language Level 1 jobs of cook

25   helper and grocery bagger.

26         The Commissioner's argument is not as compelling as it might appear at first

27   blush.  The Commissioner is assuming without any evidence or basis that Plaintiff must

28   have at least some English language skills to have worked as a cook for 16 years.

1 Plaintiff, however, could have worked in a Mexican restaurant where everyone spoke

2 Spanish and English was not needed, or other employees who were bilingual gave him

3 instructions in Spanish.  The ALJ made no inquiry of Plaintiff at the hearing about his

4 cook job.  Nor did the VE.  The ALJ's decision contains no discussion of the cook job

5 other than he no longer can perform it.  (AR 48.)  There is no evidence to support the

6 Commissioner's assumption he spoke English at the cook job nor was the cook job

7 presented by the ALJ or VE as a reason for varying from the DOT.  The VE did not even

8 erode the occupation base as one would have expected to eliminate jobs Plaintiff cannot

9 perform because English is necessary.  With findings that Plaintiff is "not able to

10 communicate in English" and is "not literate in English" (AR 48), the Court cannot say the

11 errors of the ALJ and VE are harmless or would not affect the outcome of this case on

12 the issue of disability.  Additionally, the Commissioner bears the burden at step five of

13 the sequential process to prove Plaintiff can perform work in the national economy,

14 which includes whether Plaintiff is literate.  The Commissioner did not meet that burden.

15         The Commissioner's second harmless error argument is that the VE's testimony is

16 immaterial because the Medical Vocational Guidelines (the "Grids") direct a conclusion

17 that Plaintiff was not disabled.  This rationale, however, nowhere appears in the VE's

18 testimony or in the ALJ decision, and thus the Court cannot consider it.  Connett v.

19 Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons

20 the ALJ asserts").  Also, the Commissioner argues that under Grid Rule 203.18 a

21 limitation to simple, repetitive tasks would not erode the occupational base represented

22 in that Rule.  This argument directly contradicts the ALJ's finding that the Grids do not

23 apply because Plaintiff's ability to perform medium work "has been impeded by

24 additional limitations."  (AR 49.)  The Court cannot override that finding.  The

25 Commissioner should have raised the issue with the Appeals Council or sought

26 voluntary remand to correct the decision.

27                                        * * *

28

13

1    The ALJ's RFC is unsupported by substantial evidence.  The Commissioner failed

2  to meet her burden at step five of the sequential process to prove that Plaintiff could

3  perform work in the national economy.  The ALJ's nondisability decision is not supported

4  by substantial evidence nor free of legal error.

5

6                                    **ORDER**

7    IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the

8  Commissioner of Social Security and remanding this case for further proceedings in

9  accordance with this Memorandum Opinion and Order and with law.

10

11  DATED: November 26, 2014                    */s/ John E. McDermott*
                                                JOHN E. MCDERMOTT
12                                              UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28